**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

CALVIN LEE MARSHALL
ADC #90207                                                              PLAINTIFF

V.                                      5:09-cv-00128-BSM-JJV

ANTHONY BURDEN, Sgt., Varner Super
Max, Arkansas Department of Correction, *et al.*                       DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**
**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge

Brian S. Miller.  Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.

If the objection is to a factual finding, specifically identify that finding and the evidence that

supports your objection.  An original and one copy of your objections must be received in

the office of the United States District Court Clerk no later than fourteen (14) days from the

date of the findings and recommendations.  The copy will be furnished to the opposing party.

Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,

or additional evidence, and to have a new hearing for this purpose before either the District

Judge or Magistrate Judge, you must, at the time you file your written objections, include the

following:

1

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.      PROCEDURAL HISTORY

Plaintiff, Calvin Lee Marshall, filed a *pro se* complaint (Doc. No. 2) on July 29, 2009, pursuant to 42 U.S.C. § 1983, alleging claims of excessive force and deliberate indifference to his serious mental health needs at the Varner SuperMax Unit of the Arkansas Department of Correction (ADC). Plaintiff made a timely demand for a jury trial. However, before incurring the expense and manpower inherent in such a trial, the Court held a pre-jury evidentiary hearing on August 19, 2010, to determine whether plaintiff's claims warranted a jury trial. *Johnson v. Bi-State Justice Center*, 12 F.3d 133, 135 (8th Cir. 1993). Defendants remaining in this matter are Sgt. Anthony Burden, Capt. Joe Page, and unidentified Doe defendants, all of whom were employed at the Varner Unit at the time of the events giving

rise to this litigation.

Based on careful review of the testimony at the hearing and Defendants' exhibits in

support of their affirmative defense of failure to exhaust administrative remedies, the Court

recommends that Plaintiff's claims should be dismissed without prejudice.

## II.     FACTS

On May 15, 2008, Sgt. Burden (and several prison officials who are not named as

defendants) made contact with Marshall because he had been flooding his cell.  Marshall

informed Sgt. Burden that he was depressed over the recent death of a family member and

asked if he could walk in one of the isolation dayrooms to "clear his thinking."  Sgt. Burden

placed Marshall in handcuffs and escorted him to a single-man shower stall.  Capt. Page was

called to the scene and began questioning Marshall, who again stated he was depressed and

wanted to walk around the dayroom.  When asked if he had any suicidal thoughts, Marshall

admitted he did.

Capt. Page left and Sgt. Burden returned, ordering Marshall to disrobe and don a

paper gown and shower shoes.  At this point, Marshall realized jailers were going to place

him on suicide watch and he objected.  He then denied being suicidal and continued to resist

instructions to disrobe for placement on suicide watch.  Burden and Page then returned in riot

gear.

As the situation escalated, Marshall admitted he expected the guards would use pepper

spray but he "did not have a problem with that."  Thus, rather than disrobe and don the gown

as instructed, he removed his clothing a piece at a time, turning each piece inside out to show

he had no concealed items.  Marshall was not complying with instructions to put on the gown, so Page and Burden sprayed him with pepper spray.  Marshall testified he went away from them to catch his breath and officers sprayed him again.  Marshall was sprayed five times altogether.  After the fifth time, officers unlocked the stall and forcibly restrained Marshall.

Guards then placed Marshall under the hot shower water to wash off the pepper spray, then moved him to a cell and placed him on suicide watch.  He complained to jail personnel about the burning of the pepper spray but was told that "time would be the only thing he got" to "deactivate" the spray.  Plaintiff has not required medical attention for injuries as a result of this incident.

### III.     PLAINTIFF'S GRIEVANCES

At the prejury hearing, Defendants submitted evidence of Plaintiff's grievances filed concerning the May 15, 2008, incident.  (Defs.' Exs. 6, 7,  8).  Plaintiff does not dispute that these are the grievances he filed in this matter.

The ADC Inmate Grievance Procedure, AD 07-03, consists of three steps.  (Defs.' Ex. 9).  The first step is Informal Resolution, whereby the inmate must submit his form within 15 days of the occurrence of the incident.  (*Id.* at p. 1, ¶ III.B).  If the inmate does not receive a response from the "problem solver" within three days, the inmate should proceed to step two and file a Formal Resolution.  (*Id.* at p. 6, ¶ IV.E.11).  From receipt of the Formal Resolution, the ADC should provide a written response within twenty working days.  (*Id.* at p. 8, ¶ IV.F.7).  If he does not receive a response within that time period, the inmate may

move to step three, and file an appeal to the Chief Deputy/Deputy/Assistant Director level, within five working days.  (Defs.' Ex. 9, ¶ IV.F.8).  This appeal is also available if an inmate is not satisfied with the response received in step two.  The inmate should receive a response to his appeal within thirty working days of its submission.  (*Id.* at p. 9, ¶ IV.G.6).

The Inmate Grievance Procedure provides inmates notice that complete exhaustion of the grievance process is required prior to the filing of a lawsuit.  "Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC.  Inmates must fully exhaust the grievance prior to filing a lawsuit." (*Id.* at p. 4, ¶ IV.C.4).  The section of the procedure entitled, "Prison Litigation Reform Act Notice" further explains that the law requires exhaustion "as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit."  (*Id.*).

On May 21, 2008, one week after the incident and five days after he was notified of the disciplinary charge against him, Plaintiff submitted his first "informal resolution" form. (Defs.' Ex. 5, VSM08-01102).  In it, Plaintiff wrote:

> On 5/16/08, I reported to Lt. J. Page that I was feeling depressed over the recent death of a family member.  Lt. Page called Mrs. Martin of Mental Health who ordered him to place me on Treatment Precaution Status.  When Mrs. Martin later came to my cell (Iso. #4027) I asked her why did she put me on Treatment Precaution and she stated, "Because Lt. Page called me and said you told him that you were going to cut yourself up."  Sgt. M. Ruker, Sgt. D. Johnson, Sgt. A. Burden, and CO-II Moore were present and can attest that I did not tell Lt. Page that I was going to cut myself up and that neither did I display any suicidal tendencies.

(*Id.*).

Apparently the issue was not resolved, and on May 29, 2008, Marshall submitted his

Step Two Formal Grievance.  Warden Grant Harris responded on July 1, 2008, and found no

merit  to the issues raised.  Plaintiff appealed that decision on July 1, 2008, writing:

> The Warden's Response does not answer the merit of the complaint.  Mrs.
> Martin told me that she changed my status due to Lt. Page called and told her
> that I said I was going to cut myself up.  However, I never told Lt. Page or
> anyone else that I was going to cut myself up.  And Mrs. Martin never
> counseled with me prior to changing my status.  I contend that the action taken
> by Mrs. Martin against me was at the prompting of Lt. Page, without regard
> for policy or due process of law.  As a consequence, I was subjected to a
> malicious and sedistic [*sic*] use of excessive force and assaulted and battered
> multiple times on digital video with chemical agent to the facial, head and
> body area while secured inside a single-man isolation shower stall;  . . . I was
> denied medical care and the chemical agent was [*sic*] remained active on me
> for approximately 48 hours . . . .

(*Id.*).  Marshall raised these new allegations of excessive force and denial of medical care

for the first time during his appeal of grievance VSM08-01102, and they were denied on

December 16, 2008.

On June 17, 2008, Plaintiff prepared what he called a "continuation in connection with

facts and matters described or referred to in another grievance dated: 5/29/08."  (Defs.' Ex.

6, VSM08-1276).  It reads: "On 5/16/08, Sgt. Burden, Sgt. D. Johnson, Sgt. M. Ruker, and

CO-II Moore came to my cell (VSM 6-53).  Sgt. Burden asked me what was my problem and

I stated, inter alia, that I was depressed over the recent death of a family member."  This

continuation was not submitted in accordance with the grievance procedure and was

summarily denied by Warden Harris.  He stated, "Per to AD 07-03 you are to use one

grievance form per issue.  On June 3, 2008, a grievance was entered concerning this issue,

you cannot add a continuation of the grievance."  (*Id.*).

Plaintiff submitted a second "Informal Resolution" on June 30, 2008, VSM 08-1382,

stating:

> Due to the ineffectiveness, illegality and unconstitutionality of the inmate grievance procedure used in the Varner Super Max, I hereby re-submit the complaint originally filed on 6/3/08.  (This grievance is a continuation in connection with facts and matters described or referred to in another grievance dated 5/29/08.  Mrs. Martin of Mental Health told me that the reason she put me on treatment precaution was due to a staff member called and told her I said I was going to cut myself up.  However, I never told a staff member or anyone else that I was going to cut myself up.  And Mrs. Martin never counseled with me prior to changing my status.

(Defs.' Ex. 7).  This grievance was denied at all levels.

Finally, on October 6, 2008, Plaintiff filed a final grievance devoted to this incident.

It reads:

> Based upon information and belief, the policy of the Ar. Dept of Corr'n is to deprive inmates of a liberty interest without any of the procedural protections required by due process of law.  (See Deputy Director's response to grievance #V.S.M. 08-01382).  As a result of Mrs. Martin's action in failing and refusing to counsel with me prior to changing my status, I was unreasonably subjected to excessive physical force and intentional inflictions of anxiety, depression, emotional distress, and other unwarranted mental anguish.  Judging from grievance response cited above, I think Wendy Kelley (Deputy Director of Mental Health) is using her position of authority to conspire with Mrs. Martin *Et al.*; I also believe she is acting negligent and deliberately indifferent and is training Mrs. Martin and all V.S.M. mental health personnel to conspire with V.S.M. security staff be presenting a "straw-man argument" as an example of how to cover or effectively facilitate and camouflage the violation of prisoner's rights.  I am seeking injunctive relief and damages.

(Defs.' Ex.  8).

Despite Marshall's grievances being untimely filed, the Rehabilitation Program Administrator responded to the merits of the grievance.  Nevertheless, Deputy Director Wendy Kelley rejected Marshall's appeal on February 13, 2009, because the time allowed for appeal had expired.

## IV.   ANALYSIS

According to the Prison Litigation Reform Act ("PLRA"), "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In *Booth v. Churner*, 532 U.S. 731, 741 (2001), the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."

Under "the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003)(emphasis in original). More recently, the Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. at 219. Hence,

inmates are required to: (1) fully and properly exhaust their administrative remedies as to each claim mentioned in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *See Johnson v. Jones*, 340 F.3d at 627; *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).

The Inmate Grievance Procedure states, "Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC. . . Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (Defs.' Ex. 9, ¶ IV.C.4, p. 4). The grievance form also specifically instructs the inmate to "be specific as to the complaint, date, place, name of personnel involved and how [the inmate] was affected." (Defs.' Ex. 9, p. 15). Furthermore, inmates are not permitted to add additional staff members or issues to their original grievance. The grievance procedure specifically states, "The appeal cannot raise new or additional issues or complaints." (*Id*. at ¶ III.D).

Plaintiff does not mention an allegation related to the use of pepper spray in his first grievance, VSM08-01102. Plaintiff later raises an allegation of excessive force and the unconstitutional use of pepper spray when appealing this initial grievance. The grievance procedure explicitly prohibited Marshall from adding additional claims and individuals during the appeal process. Accordingly, the claims against Defendants Burden and Page have not been properly grieved and Marshall's claims should be dismissed for failure to exhaust his administrative remedies.

Although Marshall's other grievances were untimely filed and not properly before the Court, neither his June 17, 2008, grievance VSM08-1276, nor his June 30, 2008, grievance VSM08-1382, raise claims of excessive force against Burden and Page.  Those grievances relate to his being placed on suicide watch against his wishes.  The Court notes that Plaintiff did later raise the issue of excessive force on October 6, 2008, VSM08-2048, which was months after the incident and completely outside the filing time allowed.

While Mr. Marshall may perceive this Court's findings to be overly technical, the grievance process would be rendered ineffective without enforcement of its provisions.  Plaintiff's first grievance fails to properly include the claims and defendants which are the subject of this cause of action.  His late inclusion of these claims and individuals during the appeal process was improper.  Thus, the ADC never had the claims properly before them for an opportunity of administrative resolution.

Marshall was required to properly exhaust the available administrative remedies as to all claims and all individuals prior to filing suit.  *See Abdul-Muhammad, et al. v. Kempker*, 450 F.3d 350, 351-52 (8th Cir. 2006) ("must exhaust each claim against each defendant in at least one grievance").  This he has not done.  Because Plaintiff has failed to properly exhaust his administrative remedies as to the remaining claims and individuals in this lawsuit, the law mandates that his complaint be dismissed without prejudice, in its entirety.

## V.    CONCLUSION

IT IS THEREFORE RECOMMENDED that:

1.    Plaintiff's Complaint be DISMISSED without prejudice; and

2.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this <u>14th</u>  day of September, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE